UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:15-cr-19 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| RONNIE SMITH, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Ronnie Smith ("Smith") for a compassionate release. (Doc. No. 41 ["Mot"].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 42 ["Opp'n"].) On April 21, 2020, Smith filed a supplemental motion requesting release "due to COVID-19 circumstances." (Doc. No. 45 ["Supp."].) The government also opposes the supplemental request for release. (Doc. No. 46 ["Supp. Opp'n"].) For the reasons that follow, Smith's motion and supplemental motion are denied without prejudice.

I. **BACKGROUND**

In 2010, Smith entered a guilty plea to charges of conspiracy to defraud the United States, uttering counterfeit securities, and being a felon in possession of a firearm. (*See* Case No. 4:10-cr-136; Case No. 4:10-cr-137.) Prior to sentencing in these cases, Smith fled the jurisdiction. In 2015, Smith was apprehended and returned to this jurisdiction, where he faced an additional charge for failing to appear for sentencing. (*See* Case No. 4:15-cr-19; Doc. No. 1

[Indictment].) On March 20, 2015, Smith received a sentence of 188 months imprisonment for the 2010 charges, to be served consecutive to a 12-month sentence for failing to appear, for an aggregate sentence of 200 months. (Case No. 4:15-cr-19: 3-20-2015 Minutes, Doc. No. 12 [Judgment].) Following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), the Court vacated Smith's judgment. Upon resentencing, this Court sentenced Smith to a term of imprisonment of 115 months.[1] (Case No. 4:15-cr-19: 7-25-2017 Minutes, Doc. No. 31 [Amended Judgment].) Smith is currently serving his sentence at FCI Elkton and has a projected release date of February 18, 2023. *See* https://www.bop.gov/inmateloc/ (last visited 4-28-2020).

In his original motion, Smith "move[d] this Court to grant him a compassionate release and a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) because of his age [now 69 and] his health conditions [heart disease and diabetes]." (Mot. at 301.) In his supplemental motion, Smith maintains that his age and medical conditions put him at higher risk of contracting the COVID-19 virus. (Supp. at 385.) The government argues that both motions should be denied because Smith has not exhausted his administrative remedies. (Opp'n at 370; Supp. Opp'n at 423.)

II. DISCUSSION

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18

---

[1] Smith received 103 months imprisonment in Case No. 4:10-cr-136, to be served concurrently with 103 months imprisonment in Case No. 4:10-cr-137, both of which was to be served consecutive to 12 months imprisonment in Case No. 4:15-cr-19.)

U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after "fully exhaust[ing] all administrative rights to appeal a failure of the [BOP] to bring a motion on defendant's behalf", or (2) file a motion after "the lapse of 30 days from the receipt of such a request" by the warden of the prisoner's facility without a response from the warden. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute.

Appended to Smith's original motion is a letter from the Warden at FCI Elkton, dated October 10, 2019, denying his application for a compassionate release. (Doc. No. 41-4 at 361.) In the letter, the Warden concludes that Smith did not meet the criteria for consideration for early release. (*Id.*) Smith's initial request for compassionate release was received by the Warden more than a year prior to the outbreak of COVID-19 in the United States, and neither Smith's request nor the Warden's decision references COVID-19. (*See id* at 361-63.) According to the government, Smith has not fully exhausted his remedies as to his original motion because he has yet to appeal the Warden's October 10, 2019 decision in accordance with BOP's Administrative

3

Remedy Procedure, 28 C.F.R. part 542, subpart B. (Supp. Opp'n at 424-25.)

The government also argues that Smith has not exhausted his administrative remedies with respect to his supplemental motion. While Smith states that he "filed a supplemental request with the Warden to reconsider his request for home confinement in light of the COVID-19 outbreak" without any response from the Warden, he does not indicate when he filed the request, and he does not represent that 30 days has passed without a response from the Warden. (*See* Supp. at 385-86.)[2] The Court agrees with the government that Smith has failed to demonstrate that he has met the exhaustion requirement with respect to his supplemental motion.

Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. § 542.15(a); *see also* B.O.P. Program Statement 5050.50 § 571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied § 3582(c)(1)(A)); *see, e.g., United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

Absent a showing of exhaustion, this Court cannot rule on Smith's requests for compassionate release. It is true that courts are split on whether a district court may waive the exhaustion and 30-day requirement due to the exigent circumstances presented by COVID-19.

---

[2] Smith does not supply a copy of his "supplemental request," and the government has come forward with emails from an official at the BOP confirming that the BOP has received no new requests from Smith. (Doc. No. 46-2 at 451.)

*Compare United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirement in light of COVID-19); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (same); with *United States v. Raia*, 954 F.3d 594 (3rd Cir. 2020) (finding exhaustion requirement in § 3582 mandatory); *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases finding that "a failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"); *see also United States v. Johnson*, No. RDB-14-0441, 2020 WL 1663360, at *2 (D. Md. Apr. 3, 2020) (holding that the "exhaustion requirements of § 3582(c)(1)(A) are jurisdictional in nature, and [the district] court may not expand its jurisdiction by waiving such requirements").

While the Sixth Circuit has not addressed this issue, the Third Circuit has, also in the context of a defendant's motion for a compassionate release that cited COVID-19 concerns. In *Raia*, the Third Circuit ruled that the fact that the petitioner did not wait the requisite 30-day period before seeking a compassionate release from the district "present[ed] a glaring roadblock foreclosing compassionate release[.]" *Raia, supra*. In so ruling, the court explained:

> We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia [68 year old individual with diabetes and "heart issues"]. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and

> critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in case like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*Id.*

The Court agrees with the reasoning and logic of the Third Circuit. In addition to a lack of any indication in the language of § 3582(c)(1)(A) that the exhaustion requirement is discretionary or may be waived, the exhaustion requirement serves the important purpose of allowing the BOP—an agency that is in a better position to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release—the opportunity to address such requests in the first instance. Accordingly, the Court "will not read an exception into § 3582(c)(1) which does not exist[,] and Smith's motions are denied for failure to exhaust his administrative remedies. *See Johnson*, 2020 WL 1663360, at *6 (denying inmate's motion for compassionate release for failure to exhaust administrative remedies).

Even if the Court entertained Smith's supplemental motion on the merits at this time, it would be without authority to modify his sentence, as he requests, to provide for home confinement, because that authority rests with the BOP. *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of

2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original). The BOP has "begun immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC, … to determine which inmates are suitable for home confinement." Fed Bureau of Prisons, Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp, April 5, 2020 (last accessed 4-28-2020).[3] The BOP has instructed that "inmates do not need to apply to be considered for home confinement" under this directive, but "any inmate who believes they are eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager." *Id*. The fact that the BOP has already begun to identify vulnerable inmates for release to home confinement represents further proof that it is in the best position to quickly consider whether the relief Smith now seeks is appropriate.

Additionally, given the fact that Smith is incarcerated at FCI Elkton, is over the age of 65, and may have a heart and/or lung condition, it appears Smith may be a member of the subclass identified by Judge James S. Gwin in the emergency habeas action of *Wilson v. Williams*, No. 4:20-cv-794. On April 22, 2020, Judge Gwin issued a preliminary injunction requiring officials at FCI Elkton to identify all members of the subclass and determine whether they are eligible for immediate release or parole, or relocation to another BOP facility. (*See* Case

---

[3] According to the BOP's website, the BOP has already increased home confinement by more than 40% since March 2020. *Id*. In fact, under § 12033(b)(2) of the Coronavirus Aid. Relief, and Economic Security Act ("CARES" Act), Pub. L. No. 116-136, enacted March 27, 2020, the Attorney General now has the authority to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place inmates in home confinement under 18 U.S.C. § 3624(c)(2) . . . ."

No. 4:20-cv-794, Doc. No. 22 at 371-72[4].) Accordingly, Smith may secure a compassionate release or transfer to another facility in the near future via the pending habeas action. At this time, however, this Court is without authority to grant him the relief he seeks.

### III. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's briefs opposing compassionate release, Smith's motions for a compassionate release are denied without prejudice. This is not to say that Smith is not a candidate for a compassionate release. This issue is yet to be determined. But for now, until Smith exhausts his administrative remedies, this Court lacks jurisdiction.

**IT IS SO ORDERED**.

Dated: April 29, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[4] It appears from the docket in that action that the government has filed a notice of interlocutory appeal challenging Judge Gwin's Order. (Case No. 4:20-cv-794, Doc. No. 26 (filed 4-27-2020)).