# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:15-cr-019 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| RONNIE SWEETS SMITH, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Now before the Court is the renewed motion of defendant Ronnie Smith ("Smith") for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Case No. 4:15-cr-019, Doc. No. 49 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 50 ["Opp'n"]), and Smith has filed a reply (Doc. No. 51 ["Reply"]), and an emergency supplement (Doc. No. 52 ["Suppl."]). On June 17, 2020, the Court conducted a hearing on the motion. For the reasons that follow, Smith's renewed motion is DENIED.

## I. BACKGROUND

In 2010, Smith entered a guilty plea to charges of conspiracy to defraud the United States, uttering counterfeit securities, and being a felon in possession of a firearm. (*See* Case No. 4:10-cr-136; Case No. 4:10-cr-137.) Prior to sentencing in these cases, Smith fled the jurisdiction. During his time as a fugitive, Smith continued to commit crimes by possessing and passing counterfeit money and using a false identity. In 2015, Smith was apprehended and returned to this jurisdiction, where he faced an additional charge for failing to appear for

sentencing. (*See* Case No. 4:15-cr-19; Doc. No. 1 [Indictment].) On March 20, 2015, Smith received a sentence of 188 months imprisonment for the 2010 charges, to be served consecutive to a 12-month sentence for failing to appear, for an aggregate sentence of 200 months. (Case No. 4:15-cr-19, 3-20-2015 Minutes, Doc. No. 12 [Judgment].) Following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), the Court vacated Smith's judgment. Upon resentencing, this Court sentenced Smith to a term of imprisonment of 115 months.[1] (Case No. 4:15-cr-19: 7-25-2017 Minutes, Doc. No. 31 [Amended Judgment].) Smith is currently serving his sentence at FCI Elkton and has a projected release date of February 18, 2023. *See* https://www.bop.gov/inmateloc/ (last visited 6-17-2020).

On November 15, 2019, Smith filed a *pro se* motion asking "this Court to grant him a compassionate release and a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) because of his age [69 and] his health conditions [heart disease and diabetes]." (Doc. No. 41 at 301.)[2] Through counsel, he filed a supplement to his motion on April 21, 2020, claiming that his age and medical conditions put him at higher risk of contracting the COVID-19 virus. (Doc. No. 45 at 385.)

In an opinion, dated April 29, 2020, the Court denied Smith's motion without prejudice, finding that he had not satisfied the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A), in that he had not either fully exhausted his administrative remedies or thirty days had passed since he had submitted a request for a compassionate release without a response from the warden of his facility. (Doc. No. 48 at 462.) The Court also held, as it had previously on numerous

---

[1] Smith received 103 months imprisonment in Case No. 4:10-cr-136, to be served concurrently with 103 months imprisonment in Case No. 4:10-cr-137, both of which was to be served consecutive to 12 months imprisonment in Case No. 4:15-cr-19.)

2

occasions, that the exhaustion requirements of § 3582(c)(1)(A) cannot be judicially waived.[3] (*Id.* at 462-64.) *see United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *4 (E.D. Tenn. May 13, 2020) (noting that "most courts to examine the issue in [the Sixth Circuit] have agreed" that § 3582(c)(1)(A)'s exhaustion requirements cannot be waived)." (collecting cases). On June 2, 2020, the Sixth Circuit likewise held that the exhaustion requirements of § 3582(c)(1)(A) are mandatory and cannot be judicially set aside. *See United States v. Alam*, No. 20-1298, at *2 (6th Cir. June 2, 2020) (recommended for publication).

On April 17, 2020, Smith filed an administrative request with the warden of Elkton for a compassionate release. (Doc. No. 49-1.) The warden denied the request on April 27, 2020. (Doc. No. 49-2.) In that response, the warden explained that, "Health Services staff have reviewed your medical records and determined that you do not meet the criteria for a compassionate release/reduction in sentence at this time." (*Id.* at 492.)

Smith appended to his renewed motion a memorandum prepared by the Health Services Administrator of Elkton that expounded upon the determination by Health Services that Smith did not meet the BOP criteria for compassionate release. (Doc. No. 49-2 at 493.) There, the administrator noted:

> A review of the inmate Smith's medical chart reveals he arrived at FCI Elkton on July 31, 2019. He is a 69 year old inmate with a medical history of Hypertension, chronic kidney disease, arthritis, and vision loss. He has been followed on a regular basis in [the] chronic care clinic since and remains medically stable at this time.
>
> Based on this review it is noted that inmate Smith is classified as a Medical Care Level II inmate. He does not have a terminal or incurable disease with a life

---

[2] Unless otherwise noted, all subsequent record citations are to Case No. 4:15-cr-19.

[3] Additionally, the Court observed that it was without authority, in any event, to provide Smith with his requested relief—home confinement for the remainder of his sentence. *Id.* at 464-65.

>expectancy of 18 months or less. He has not suffered a debilitating injury and is not considered disabled or unable [to] carry on self-care. Therefore, he does not meet the medical criteria for compassionate release/reduction in sentence under the revised policy.

(*Id*.)

In his renewed motion, Smith maintains that he has now satisfied the statutory exhaustion requirements because the warden has denied his request and thirty days has passed since he first submitted that request to the warden. (Mot. at 470-71.) Accordingly, he again requests a compassionate release based upon his age (69) and his heart conditions—that have resulted in a heart attack in 2019 due to the development of blood clots in his legs—and his history of diabetes and high blood pressure. (Mot. at 471, citing Doc. No. 29 (Presentence Investigation Report ["PSR"]) at 224-25.) He also cites the additional medical conditions identified by the Health Services Administrator.

In a supplemental filing on June 9, 2020, Smith reported that he had recently been diagnosed with COVID-19. (Suppl. at 508.) He offered no details regarding the severity of his condition or the symptoms, if any, that he is experiencing. He reported, however, that "prison staff are doing nothing to provide treatment to those who have tested positive, and have stopped performing even temperature checks." (*Id*. at 509.) If released, he maintained that "he would immediately self-quarantine at his daughter's home without having contact with others for fourteen days upon his release." (*Id*.)

On June 17, 2020, the Court conducted an evidentiary hearing, in order to receive more information on the nature of Smith's illness and the steps taken by the staff at Elkton to treat his illness. Smith and his attorney reported that Smith was tested for the virus on May 22, 2020. On May 24, 2020—the day the positive result was returned—Smith was moved from his residential

4

pod to a quarantine center located in the prison chapel/gymnasium. According to Smith, there were approximately 45 inmates in this center. He remained in this first quarantine area for a period of seven (7) days before he was moved to a second quarantine center. This second center included approximately 115 inmates in quarantine. Smith was quarantined in this second location for fourteen (14) days, and he is now awaiting a transfer back to a residential pod. He has also been cleared to walk to the cafeteria for meals, but he reports that he gets winded when he walks.[4]

Contrary to Smith's representation in his emergency supplement, during the course of the virus (and his quarantine), Smith's temperature was monitored, and it was conceded that his temperature never registered above 100º (Fahrenheit). As to Smith's alleged symptoms of chest tightness and breathing difficulty he volunteered that those symptoms could be attributed to the stress he has experienced since testing positive for the virus. Additionally, as to Smith's very recent claims that he is experiencing bladder and kidney problems that have caused him to urinate frequently, upon reporting those symptoms, on June 16, 2020, he was examined by medical staff, tests were performed, and he was promptly prescribed medication to address the problem.

Even with the measures taken by the BOP to quarantine and monitor's Smith's condition, he complains that prison medical staff did not properly attend to his medical needs while he was in quarantine. According to Smith, he received no screening for his pre-existing heart condition, like testing for blood clots, electrocardiograms or echocardiograms. Further, counsel represented

---

[4] Smith's supplement advising of his diagnosis of COVID-19 was not filed until June 9, 2020. Counsel explained that, as a precaution, Smith and other quarantined inmates had limited contact with others during their quarantined periods and did not have opportunities for communication with counsel.

that Smith believes that, prior to the pandemic, prison medical staff were not properly following up with what he believes to be appropriate heart monitoring. While he concedes that he has continued to receive his previously prescribed medications, including his heart medication, he maintains that medical staff did not and are not monitoring his blood pressure or breathing. Through counsel, Smith reported that he is afraid of contracting the virus again and of developing complications as a result of continued exposure in the prison to the virus.

## II. DISCUSSION

### A. Exhaustion

As the Court has previously noted in this and other cases, the sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act of 2018 (FSA) amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct

routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

There is a split in authority on the question of whether the exhaustion requirement is satisfied simply by making a formal initial request and allowing thirty days to elapse prior to filing suit (regardless of the outcome of the initial request), or whether a response by the warden within 30 days "eliminat[es] the elapse of thirty (30) days as a path to judicial review because this denial, unlike an implicit denial, can be appealed administratively." *See United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at *3 (E.D. Tenn. May 13, 2020) (finding inmate who had his administrative request for compassionate release denied by warden within 30 days was required to fully exhaust administrative remedies before filing suit); *see also United States v. Fields*, No. 3:12-cr-00022-JKS-1, 2020 WL 2744109, at *4–5 (D. Alaska May 6, 2020) (noting the split in authority and collecting cases).

The Sixth Circuit appears to have weighed in on this debate over statutory interpretation in favor of finding that the passage of thirty days, regardless of the availability of administrative appeals, triggers an inmate's right to proceed in federal court. *See Alam*, No. 20-1298, at *5 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, *no matter the appeals available to them*.") (emphasis added). In any event, the court in *Alam* also held that the exhaustion requirements in § 3582(a)(1)(A), while mandatory claim-processing rules, are not jurisdictional in nature. *Id.* at *3. Because these statutory exhaustion requirements are not jurisdictional, they bind a court "only when properly asserted

7

and not forfeited." *Id*. (citing *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam)). For purposes of the present motion, the government has conceded that Smith has exhausted his administrative remedies, and, therefore, the Court finds that it can reach the merits of Smith's motion.

### B. Availability of Compassionate Release

There are three components to a compassionate release merits analysis: (1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; (2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and (3) whether defendant would be a danger to the public.

#### 1. Extraordinary and Compelling Circumstances

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1. While the section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the

8

Commission lacks an applicable policy statement regarding when a judge can grant compassionate release … because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 447, 499 (S.D. Iowa 2019) (collecting district court cases)). Given this lack of applicable guidance, courts have held that they are not constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.")

Moreover, in light of the unprecedented circumstances surrounding the COVID-19 pandemic, "[n]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for purposes of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020); *see Bolze*, 2020 WL 2521273, at *7 (noting that "a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a

chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19").

The government acknowledges "that the COVID-19 outbreak at FCI Elkton may form a basis for 'extraordinary and compelling' reasons to consider release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.C. § 1B1.13(I)(A) given Smith's age and medical history." (Opp'n at 500.) Likewise, the Court finds that Smith's age, history of hearth disease, kidney disease, and diabetes all constitute risk factors identified by the Centers for Disease Control and Prevention ("CDC") that, separate or in combination, place him at a higher risk of experiencing serious illness from COVID-19.[5] Accordingly, the Court finds that Smith has demonstrated "extraordinary and compelling" reasons to consider his request for compassionate release, even though it appears that the BOP has taken steps to monitor and treat his medical conditions, perhaps not in the precise way Smith would like.

### 2. § 3553(a) Factors and the Danger to the Community

Smith argues that consideration of the relevant § 3553(a) sentencing factors support the Court granting his request for compassionate release. He explains that, in 2010, because he was facing a fifteen-year mandatory sentence under the Armed Career Criminal Act, he was scared and fled and remained a fugitive for three years. "Upon his apprehension and sentence, [he reports he] "began acting as a model inmate and has remained as one since his custodial sentence

---

[5] At the June 17, 2020 hearing, the government argued that the fact that Smith has now recovered from the virus means that he is less likely to be in danger of experiencing death or serious illness from COVID-19 in the future due to the build-up of immunity. Too little is known about the virus to know if people like Smith will have immunity from future infection. *See* https://www.cdc.gov/coronavirus/2019-ncov/faq.html#Coronavirus-Disease-2019-Basics ("We do not know yet if having antibodies to the virus that causes COVID-19 can protect someone from getting infected again or, if they do, how long this protection might last. Scientists are conducting research to answer these questions.") (lasted visited 6-17-2020). In any event, the Court will assume, for purposes of the present renewed motion, that Smith remains at risk from COVID-19.

began in 2015." (Mot. at 486.) He represents that he "has had no disciplinary infractions and no violations, and has taken . . . several rehabilitative courses[.]" (Mot. at 469.) Despite his age and medical conditions, he also reports that he has "consistently worked in the prison's 'work pool,' where he has received good reports from his supervisors." (*Id*. at 486, citing the record.) According to Smith, his good institutional behavior and the circumstances surrounding the extent of the outbreak of the virus at Elkton all favor a compassionate release.

But the compassionate release statute directs courts to consider all of the 18 U.S.C. § 3553(a) sentencing factors "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). The government argues that the remaining factors—including the nature and circumstances of the offense, the need for the sentence to be served as imposed, Smith's extensive criminal history punctuated by numerous violent crimes, and his "blatant disregard for the Court's order to appear while on bond," outweigh his current health concerns and his recent rehabilitative efforts. Additionally, the government insists that Smith remains a danger to the community. *See* U.S.S.G. § 1B1.13(2) (A district court may only order a compassionate release if it finds that the inmate "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)").

At re-sentencing, the Court determined that Smith's criminal history, which spanned a period of more than 30 years and included convictions for violent offenses like felonious assault, aggravated menacing, and armed robbery, resulted in a criminal history category of IV, and an advisory range of 92 to 115 months.[6] (PSR at 217–22; Doc. No. 34 (Sentencing Hearing Transcript ["TR"]) at 253–4, 258.) The Court imposed a sentence at the highest end of the range

---

[6] The Court notes that many of Smith's prior offenses involved fraud and the use of aliases. (*See* PSR at 217-22.)

to reflect the serious nature of the underlying conduct, which involved victimizing innocent people through fraudulent means and recruiting others to engage in criminal conduct and possessing multiple weapons while under a disability, as well as to address Smith's blatant disregard for the law, the most serious of which was his decision to flee the jurisdiction pending sentencing in 2012. (TR at 271-73.)

The Court finds that shortening the sentence further to time-served would undermine the need for the sentence imposed to reflect the seriousness of these crimes and the disrespect Smith has shown toward the Court and the laws of this country. Additionally, the Court finds that, because of Smith's extensive history with weapons and violence, he remains a risk of danger to the community. Finally, while the Court commends Smith for his good behavior in prison and his efforts to participate in courses and training that will assist him when he does transition back into society, his rehabilitative efforts are overshadowed by his past conduct outside of prison.

At the hearing, defense counsel acknowledged his client's significant criminal record but suggested that Smith would be willing to submit to a lengthy period of home confinement. But this Court has already held that it lacks the authority to modify Smith's sentence to provide for home confinement, as he suggests, because that authority rests with the BOP.[7] *See Tapia v. United States*, 564 U.S. 319, 331, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011) (holding "[w]hen a court sentences a federal offender the BOP has plenary control, subject to statutory constraints, over 'the placement of the prisoner's imprisonment,' [18 U.S.C.] § 3621(b)]"); *see, e.g., United States v. Brown*. No. RDB-16-CR-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020)

---

[7] If the Court had the authority to modify Smith's sentence to include a period of home confinement, it would be reluctant to do so, even with electronic monitoring, given Smith's prior flight from the jurisdiction, nearly three-year absence as a fugitive, and his persistence in possessing weapons while prohibited from doing so.

(denying a motion for home confinement filed by a prisoner citing concerns over COVID-19 because "[i]t is inherently the authority of the [BOP] to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c)"); *United States v. Curry*, No. 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act [of 2018] gives the *Attorney General* [or the BOP by designation of the Attorney General] the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant [home confinement].") (emphasis in original).

The Court is sympathetic to Smith's difficult circumstances—contracting COVID-19 and living with multiple serious medical conditions—but the fact remains that Smith has and continues to receive appropriate medical care for his conditions. The record reflects that Smith was promptly moved into quarantine upon testing positive for the virus, where his condition was monitored and he continued to receive the prescribed medications for his underlying medical conditions. And when he brought specific concerns to medical staff—like his frequent urination—he was immediately prescribed medication to address the problem. Further, it appears that he has now largely recovered from the virus and is ready to be returned to the prison general population.

### III. CONCLUSION

Because the Court finds that the § 3553(a) sentencing factors, as well as the danger he continues to pose to the community, counsel against granting his immediate release, Smith's

renewed motion for a compassionate release is DENIED.

    **IT IS SO ORDERED**.


Dated: June 18, 2020

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**